Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 857 | **DATE** | 8/26/2002 |
| **CASE TITLE** | Knights Franchise Systems, Inc. Vs. Roadway Inn-Bloomington, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion to avoid defendant's alleged fraudulent transfer to Vicki Cook Muhs and for turnover order is granted.

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KNIGHTS FRANCHISE SYSTEMS, )
INC., )
)
      Plaintiff/ )
      Judgment Creditor, )
)
    vs. ) No. 02 C 857
)
ROADWAY INN-BLOOMINGTON, )
INC., )
)
      Defendant/ )
      Judgment Debtor. )

DOCKETED
AUG 2 8 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Knights Franchise Systems, Inc. (KFS) sued defendant Roadway Inn-Bloomington, Inc. (Roadway) on June 29, 2000, in the Central District of Illinois. On June 18, 2001, while the suit was pending, Roadway sold the hotel and related facilities, its only asset, to Mansehra Corp. and Umaraj Hospitality, Inc. for $1,435,000. $295,000 was paid at closing and disbursed to various creditors. The balance of $1,140,000 was secured by a mortgage and a note. On that same day Roadway made a partial assignment of the mortgage and the note as follows:

1. $507,293.04 to Vicki Cook Muhs, the wife of Dallas E. Muhs, Roadway's president, payable at $4,613.22 per month from September 1, 2001 to July 31, 2006, with a balloon payment of $454,832.98 on July 31, 2006.

2. $314,525.66 to P K Management, Inc., a corporation largely owned by Dallas Muhs' sister, Betty Potasnak, payable at $2,477.95 per month, October 1, 2001 to July 31, 2001, with a balloon payment of $275,687.42 on July 31, 2006.

32

    3. $73,196.63 to Betty Potasnak, payable at $665.64 per month, September 1, 2001 to July 31, 2006, with a balloon payment of $65,626.91 on July 31, 2006.

    That left, we believe, $244,984.67 owing to Roadway, and that is payable at $1,081.60 per month, with a balloon payment of approximately $212,011.76 on July 31, 2006.

    Summary judgment on liability was entered for KFS on December 12, 2001, with an initial judgment for $166,704.89 on January 3, 2002, and an amended judgment of $206,254.26 on March 26, 2002. Plaintiff sought a turnover order with respect to the money payable directly to Roadway and also an order vacating the assignment of Vicki Cook Muhs (Vicki) and turning over that interest to the extent necessary to satisfy the judgment. The amounts now payable to Roadway and to Vicki are presently being paid into escrow, pending resolution of plaintiff's motion. There was, apparently, no objection to a turnover order with respect to the Roadway asset, and it was so ordered. But that largely postpones payment until 2006, and with post-judgment interest compounding it may not provide full recovery even then.[1] Thus KFS seeks to vacate the partial assignment to Vicki. It contends that it was a fraudulent transfer within the meaning of the Uniform Fraudulent Transfer Act (UFTA), 740 ILCS 160/1 *et seq.*, for four separate reasons. First, it claims that Roadway made a voluntary transfer without receiving reasonably equivalent value in exchange at a time when the debtor had incurred obligations elsewhere and had not retained sufficient property to pay its obligations. It is enough that another claim or other claims are outstanding, whether or not it has matured or is disputed. Fraudulent intent is presumed, and a conveyance may be avoided when it is a voluntary transfer which is made for no or inadequate consideration, and which directly impairs the rights of creditors. 740 ILCS 160/5(a)(2); <u>Casey National Bank</u>

---

[1] It is unclear how, or if, the payment to Roadway were made prior to the escrow order, as, we are told, Roadway's bank account closed in July 2001.

v. Roan, 218 Ill.Dec. 124, 668 N.E.2d 608 (Ill.App. 4 Dist. 1996). Because the transfer was made to the wife of the corporate president, Roadway has the burden of showing that the partial assignment was for reasonably equivalent value. In re Mussa, 215 B.R. 158, 172 (N.D.Ill. 1997)

Second, plaintiff claims that it can avoid the partial assignment, pursuant to 740 ILCS 160/6(a), because the transfer was made after plaintiff's claim arose, the transfer was made without receiving a reasonably equivalent value in exchange for the transfer, and the debtor became insolvent as a result of the transfer. Plaintiff further claims that it can avoid the partial assignment, pursuant to 740 ILCS 160/6(b), because the transfer was made after plaintiff's claim arose, the transfer was to an insider for a purported antecedent debt, the debtor was insolvent at the time and the insider had reasonable cause to believe that the debtor was insolvent. Finally, plaintiff claims it can avoid the partial assignment, pursuant to 740 ILCS 160/5(a)(1), because the transfer was made with actual intent to hinder, delay or defraud KFS.

We earlier voided the assignment to Vicki to the extent that it was based, without dispute, upon a debt to Dallas. Defendant had, however, in a supplemental response, claimed that the balance of the assignment was to satisfy a preexisting debt to Vicki, secured by a valid lien, and described the purported circumstances by which the indebtedness arose. We asked plaintiff to respond, and it did so. We are persuaded by that response that the "debt" to Vicki rests entirely upon the contention that she is entitled to one-half of her husband's assets and that, therefore, any debt to Dallas is one-half owed to her. We agree that upon dissolution of marriage a spouse is generally entitled to share in the marital assets as determined by the court. But there has been no dissolution of the marriage and we are unaware of any law

supporting the notion that a debt owed to one spouse is in part the property of the other spouse in an ongoing marriage. Indeed, defendant's contention, if correct, would require a debtor to issue one check to a husband and another to a wife for a debt owed to one of them or be deemed not to have satisfied his obligation, and that is just not so. The admissions detailed by plaintiff in its supplemental reply memorandum make it clear that Vicki never advanced her own funds to defendant. If there was no consideration for the notes, then both the notes and the lien of the trust deeds are nullities. Burke v. Burke, 89 Ill.App.3d 826, 412 N.E.2d 204, 45 Ill.Dec. 71 (2d Dist. 1980); Evans v. Berko, 408 Ill. 438, 97 N.E.2d 316 (1951); Codo v. Union National Bank and Trust Co. of Joliet, 54 Ill.App.3d 810, 370 N.E.2d 140, 12 Ill.Dec. 517 (2d Dist. 1977).

If there was no valid debt and lien at the time of the assignment, it was a voluntary transfer when the defendant had not retained sufficient property to pay its obligations, and it directly impaired the rights of plaintiff. It was made after plaintiff's claim arose and the debtor became insolvent as a result, *i.e.*, it could not pay its obligations in the normal course. The assignment was voidable for either reason and, accordingly, we vacate the assignment to Vicki and turn over that interest to the plaintiff to the extent necessary to satisfy the judgment.[2]

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

Aug. 26, 2002.

---

[2] In the circumstances it is unnecessary to consider two additional contentions why the assignment is voidable or plaintiff's contention that the trust deeds are not valid against it because they were not recorded and plaintiff had no notice of them.